## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:

OPEN TEXT HOLDINGS, INC.,
OPEN TEXT INC;

      Plaintiffs,

          v.

MERLIN SEARCH TECHNOLOGIES, INC.

      Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs Open Text Holdings, Inc. and Open Text Inc. (collectively "Plaintiffs" or "OpenText"), file this Complaint against Defendant Merlin Search Technologies, Inc., and alleges as follows:

### THE PARTIES

1.     Plaintiff Open Text Holdings, Inc. ("OTHI") is a Delaware Corporation having an address at 251 Little Falls Drive, Wilmington DE, 19808.

2.     Plaintiff Open Text Inc. ("OTI") is a Delaware Corporation having an address at 2440 Sand Hill Road, Suites 301 & 301, Menlo Park, California 94025.

3.     Defendant Merlin Search Technologies, Inc. ("Merlin" or "Defendant") is a corporation organized and existing under the laws of Delaware.  On information and belief, Merlin's corporate headquarters is located at 6851 S. Holly Circle, Suite 160, Centennial, Colorado 80112.

4.      Merlin was originally registered on March 5, 2019, as a Delaware corporation under the name, Merlin Digital Magic, Inc. providing the mailing address of its sole incorporator as 3605 E Cedar Ave, Denver, Colorado 80209.

5.      Merlin Digital Magic, Inc. amended its name to Merlin Search Technologies, Inc. on August 27, 2021, and further represented that the sole incorporator, John Tredennick, was serving as its chief executive officer at that time.

## JURISDICTION AND VENUE

6.      This action arises under the laws of the United States, Title 15, Title 17, and Title 28 of the United States Code.  This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338(a), and 17 U.S.C. § 501(b).

7.      Defendant is subject to this Court's personal jurisdiction because it has a regular and established place of business in the District of Colorado at 6851 S. Holly Circle, Suite 160, Centennial, Colorado 80112 and has and continues to conduct substantial business within this Judicial District, including actions that constitute copyright infringement, false designation of origin, false advertising, and unfair competition.

8.      Venue properly lies in this District pursuant to at least 28 U.S.C. §§ 1391(b)(1), 1391(c)(2) and 1400(a) because Defendant has its principal place of business within this District. Further, Defendant's infringing actions are directed at consumers in this District and cause harm to Plaintiffs in this District.

## FACTS

### OpenText's Business

9.     OpenText is an industry leader in enterprise information management. Since being established in 1991, OpenText has grown into a trusted provider of complex data management solutions.  OpenText's business has evolved to meet the needs of its customers as information technology requirements have changed.  Today, OpenText provides data management solutions to consumers in the following fields: legal, automotive, banking, healthcare, life sciences, public sector, and oil and gas.

10.     Within the legal industry, OpenText provides software and cloud-based services to assist with discovery, document review, privacy, and compliance.

11.     Customers for legal software generally fall into two groups.  The first group comprises sophisticated eDiscovery professionals who closely follow the industry and have expertise in evaluating software for use in discovery and document review.  The second group comprises lawyers who generally understand the concepts associated with eDiscovery software, but are likely not nearly as sophisticated as eDiscovery professionals because they are involved not only in eDiscovery, but also the practice of law.

### OpenText's Intellectual Property

12.     In 1990, as a partner in a national law firm, John Tredennick led the initial development of an electronic document repository.

13.     Mr. Tredennick was subsequently involved in the continued development of that document repository into a full-feature eDiscovery software platform at a privately-held company that ultimately became known as Catalyst Repository Systems, Inc. ("Catalyst").

14.     By 2013, Catalyst had commercially introduced "Insight Predict," a predictive coding product for use in eDiscovery.

15.     In 2017, Catalyst commercially launched "Insight Discovery," an eDiscovery document repository management program for corporate legal departments which was capable of handling tens of millions of electronic documents and multiple cases.

16.     Later in 2017, Catalyst acquired TotalDiscovery, an eDiscovery company that specialized in legal hold and data collection software.

17.     In 2017, Catalyst launched "Insight Business," a case reporting and analytics system.

18.     These innovative product offerings and acquisitions allowed Catalyst to provide a full service eDiscovery platform for clients across the United States and around the world.

19.     These innovative offerings also garnered Catalyst several national awards, including: Best E-Discovery Hosting Provide by Legaltech News in 2015 and 2016; New Product of the Year in 2015 at LTN Innovation; One of The Most Important E-Discovery Trailblazers by American Lawyer in 2013; Colorado Biz Company of the Year Finalist in 2012; Best E-Discovery Provider in 2012; and a Top 25 Company to Watch by Bloomberg Businessweek in 2012.

20.     As a result of its successful product introductions, marketing and sales efforts, and engagements throughout the United States, the Catalyst name and Catalyst sunburst logo was and continues to be associated in the minds of legal software consumers with technology assisted review ("TAR") and the management of documents in association with legal processes.

21.     In January 2019, Catalyst was became a wholly-owned subsidiary of Open Text Corporation, a Canadian Corporation, and was subsequently merged with and into OTHI on

October 1, 2019.  After the date of the merger, OTHI was the beneficiary of the goodwill built-up as a result of Catalyst's nearly two decades of successful product, marketing, sales, and engagements throughout the United States.  Moreover, as of the merger, OTHI was the owner of all of Catalyst's intellectual property and associated rights, including but not limited to the copyright and common law trademark rights asserted in this Complaint.

22.     Thus, in 2019, when OTHI acquired Catalyst and all of Catalyst's intellectual property, that intellectual property included, among other things, the copyright rights in and to the works: (A) "A User's Guide to TAR (for Smart People)"; (B) "The Legal Hold Handbook for Smart People"; (C) "The IT Handbook: Legal Hold and Collection" and (D) "TAR for Smart People: How Technology Assisted Review Works and Why it Matters (3rd Edition)" (collectively, "the Catalyst Works").

23.     OTHI owns U.S. Copyright Registration TX-9-126-511 for A User's Guide to TAR (for Smart People) which was duly issued by the U.S. Copyright Office on June 2, 2022.

24.     OTHI owns U.S. Copyright Registration TX-9-126-499 for The Legal Hold Handbook for Smart People, which was duly issued by the U.S. Copyright Office on June 2, 2022.

25.     OTHI owns U.S. Copyright Registration TX-9-126-507 for The IT Handbook: Legal Hold and Collection, which was duly issued by the U.S. Copyright Office on June 2, 2022.

26.     OTHI also filed a copyright application with the  U.S. Copyright Office for TAR for Smart People: How Technology Assisted Review Works and Why it Matters (3rd Edition), on May 4, 2022.  As of the filing of this Complaint, the Copyright Registration for this work has not yet been issued.

27.     Copies of the certificates of registration from the U.S. Copyright Office for the works: (A) "A User's Guide to TAR (for Smart People)"; (B) "The Legal Hold Handbook for Smart People"; and (C) "The IT Handbook: Legal Hold and Collection" (collectively, "Catalyst Copyright Registrations") are attached hereto as **Exhibit A**.

28.     Three of the Catalyst Works have included an explicit copyright notice since their initial publication.  First, on page 1 of A User's Guide to TAR, it states "(c) 2017 Catalyst. All Rights Reserved."  Second, on page 2 of The Legal Hold Handbook for Smart People, it states "(c) 2018 Catalyst. All Rights Reserved. To download the digital edition of this book, please visit: www.catalystsecure.com/legal-hold-handbook".  Third, on page 4 of TAR for Smart People: How Technology Assisted Review Works and Why it Matters (3rd Edition), it states "(c) 2018 Catalyst. All Rights Reserved. . . . . To download the digital edition of this book, please visit: www.catalystsecure.com/TARforSmartPeople".

29.     OTI operates as the sales and service organization in the United States for the goods and services which embody the copyright and common law trademark rights held by OTHI asserted in this Complaint.

**Defendant's Actions**

30.     Merlin commenced business operations on or about March 2019.

31.     In March 2019, according to a filing made by Merlin with the U.S. Trademark Office, Merlin was providing a cloud-based software platform for workflow management, legal compliance management, litigation management and tracking, regulatory compliance management, managing employee disputes, accidents, complaints, terminations and litigations, managing marketing campaigns and sales activity, and workflow management relating to

insurance requests, policy negotiations, claims administration, quality control and analytics in the insurance and reinsurance industries under the name "Merlin."

32.     Merlin is now in the business of providing software and services for legal discovery and document review.

33.     In connection with its current business, Defendant Merlin controls the website http://www.merlin.tech (the "Merlin Website").

34.     Defendant advertises and markets its eDiscovery software through the Merlin Website.  The Merlin Website is directed to actual and potential customers.

35.     On the Merlin Website, Defendant publicly displays and offers copies for download and/or distribution, without authorization from OpenText, each of the Catalyst Works.

36.     Under the "News and Events" page of the Merlin Website, under a heading "Download Copies of our Founder's Books," Defendant publicly displays and provides the ability to download and/or distribute: <u>TAR for Smart People, 3rd Edition</u>, <u>A User's Guide to TAR</u>, <u>The Legal Hold Handbook</u>, and <u>The IT Handbook: Legal Hold and Collection</u>, as shown below:



37.     The same Catalyst Works are publicly displayed and offered for download and/or distribution as "Legal/Technology Resources" under the "About Us" page of the Merlin Website, as shown below:



38.     The same Catalyst Works are also publicly displayed and offered for download and/or distribution as "Resources" under the "Software" page of the Merlin Website, as shown below:



39.    The same Catalyst Works are also publicly displayed and offered for download and/or distribution under the "More Programs Articles" page of the Merlin Website, as shown below:



40.    And finally, the same Catalyst Works are also linked to the "Resources" drop-down menu on the home page of the Merlin Website, as highlighted in red below:



41.    The works reproduced, publicly displayed and made available for download by Defendant throughout the Merlin Website are substantially, if not absolutely, identical to the Catalyst Works covered by OpenText's Copyright Registrations.

42.     Defendant's reproduction, public display and offer to download OpenText's copyrighted works is done without any authorization from OpenText.

43.     Defendant's reproduction, unauthorized public display and offer to download copies of OpenText's copyrighted works is done with actual knowledge of OpenText's rights in and to the copyright rights associated with each of the Catalyst Works.

44.     As shown in many of the excerpts of the Merlin Website above and in those that follow below, Defendant is also using the Catalyst name and Catalyst sunburst logo (see example highlighted in red below) throughout the Merlin Website, without any authorization from OpenText.



45.     The Merlin Website also mentions the Catalyst name excessively.

46.     Among other mentions of the Catalyst name, as shown below, Defendant Merlin also notes on the Merlin Website that: "Our CEO and Founder, John Tredennick was interviewed

for a series on leading technologists by Cherwell Software in the fall of 2018.  He talks about founding Catalyst and the role technology will play in the future."



47.    The FAQ section of Defendant's Merlin Website also includes the bold, all-caps heading "CAN YOU TELL ME MORE ABOUT CATALYST," as shown below:



48.    If a user of the Merlin Website chooses to click on the plus sign next to the heading "CAN YOU TELL ME MORE ABOUT CATALYST," the following is displayed:



49.     In association with the professional biography of Merlin's Vice President of Software Development, the Merlin Website notes, as reproduced below, that: "In 2004 Mahesh joined the Catalyst Repository Systems team where he led the Indian development team that helped design and build Catalyst's award-winning search platforms.  In 2019, after Catalyst was acquired, Mahesh took the role as senior developer for Open Text.  Mahesh brings his experience as an e-discovery veteran who has spent close to two decades building award winning innovative products from concept to delivery."



50.     OpenText and Defendant are direct competitors in the market for sales of eDiscovery software.

51.     OpenText and Defendant advertise their respective services to the same potential and actual customers throughout the United States.

52.     Many pages on the Merlin Website have statements about Defendant's products and year of experience and expertise which are false and/or misleading.  These statements have been made by Defendant with the intent to interfere with OpenText's existing and potential business relationships by falsely representing Defendant as a long-standing provider of eDiscovery products, and by falsely representing Defendant's products as groundbreaking innovations which are superior to competitor products, like those products offered by OpenText.

53.     As shown below, notwithstanding the fact that Merlin did not exist prior to March 2019, Defendant has been and is currently representing on its Merlin Website, that it "began as part of a national law firm in the mid-1900s" and has purportedly "been building industry-leading search, review and discovery software for more than two decades."



54.     As shown below, Merlin repeats the assertion that it has "been building industry-leading search, review and discovery software for more than two decades" throughout the Merlin Website, despite this claim being factually untrue and/or misleading.





55.     As shown below, Merlin also notes on the Merlin Website that it is purportedly "reinventing search"—which it has purportedly taken "to the next level" by "marrying keyword and algorithmic search" to "provide a faster, easier, and more effective way to find relevant documents."



56.     As shown below, Merlin repeats similar false and/or misleading claims throughout the Merlin Website.



57.     Merlin further notes on the Merlin Website, as shown below, that Search 2.0 has a "seamless integration between keyboard and algorithmic search for the first time ever," and that Search 2.0 "represents a quantum leap forward" so that "[s]uddenly, people can find what they need in large document populations."



58.     As shown below, Merlin ultimately claims its Search 2.0 technology is "simply the first major change to search and review since the dawn of the digital age."



59.     Merlin also notes on the Merlin Website that it purportedly "built [its] systems from scratch and are not locked into out-of-date software or hardware."

60.     Remarkably, Merlin was able to create this purportedly ground-breaking, next-level search from scratch in less than two years.  As noted by John Tredennick in a video created "to introduce Sherlock and Search 2.0" at the Stanford CodeX conference in September 2021, Merlin purportedly "had a beta program going since March."

### COUNT I
### Copyright Infringement
### (17 U.S.C. § 501 et seq.)

61.     OpenText re-alleges and incorporates by reference each and every allegation set forth above.

62.     The Catalyst Works which are the subject of the Catalyst Copyright Registrations (the "Asserted Catalyst Works") are original works of authorship, embodying copyrightable subject matter that is subject to the full protection of 17 U.S.C. § 101 *et seq.*

63.     OpenText owns a valid copyright registration for each of the Asserted Catalyst Works, having duly registered the Asserted Catalyst Works with the Register of Copyrights.  In particular, OpenText has all right, title, and interest in and to Catalyst Copyright Registrations which afford OpenText standing to assert these claims for copyright infringement.

64.     As the owner of the Catalyst Copyright Registrations, OpenText has exclusive rights to the Asserted Catalyst Works under 17 U.S.C. § 106, including but not limited to the exclusive right to reproduce the copyright work, distribute copies of the copyright work to the public, and display the copyrighted work publicly.

65.     Merlin has reproduced, distributed, and publicly displayed nearly verbatim copies of each of the Asserted Catalyst Works, at least via the Merlin Website, as set forth in the paragraphs above.

66.     Merlin did not have OpenText's authorization to reproduce, distribute, or publicly display any of the Asserted Catalyst Works.

67.     Defendant's infringement was willful.  Defendant acted with actual knowledge or reckless disregard for whether its conduct infringed OpenText's copyright rights in the Asserted Catalyst Works.  Among other things, a copyright notice appears in association with the Asserted Catalyst Works.

68.     OpenText, most particularly OTI, has been damaged as a direct and proximate result of Defendant's infringement.

69.     Defendant's conduct has caused, and continued infringing actions and conduct will continue to cause, irreparable injury to OpenText unless enjoined by the Court.

70.     OpenText has no adequate remedy at law.

71.     Pursuant to 17 U.S.C. § 502, OpenText is entitled to a permanent injunction prohibiting infringement of OpenText's exclusive rights under U.S. Copyright Laws.

**<u>COUNT II</u>**
**False Designation of Origin**
**(15 U.S.C. § 1125(a))**

72.     OpenText re-alleges and incorporates by reference each and every allegation set forth above.

73.     OpenText owns all common law trademark rights to the Catalyst name and Catalyst sunburst logo as well as all goodwill associated with or symbolized by both, collectively and individually.

74.     The Catalyst name and Catalyst sunburst logo are both arbitrary marks when applied to legal discovery products and services.  Even if the Catalyst name or Catalyst sunburst

logo were not inherently distinctive when first used in association with legal discovery products and services at the time of their adoption, commercially significant and continuous promotion, use, and sales of legal discovery products and services in association with these marks over the span of nearly two decades has further established secondary meaning in each mark and, thus, provided further distinctiveness.  Accordingly, both the Catalyst name and Catalyst sunburst logo identify the goods and services now emanating from OpenText.

75.     Defendant Merlin's promotion, marketing, offering for sale, and sale of its goods and services in association with the Catalyst name and the Catalyst sunburst logo is and has been conducted in interstate commerce.

76.     Defendant's promotion, marketing, offering for sale, and sale of goods and services bearing the identical Catalyst name and identical Catalyst sunburst logo has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association of Defendant with OpenText or the origin, sponsorship, or approval of Defendant's goods and services by OpenText.

77.     By using the Catalyst name and Catalyst sunburst logo in connection with Defendant's goods and services, Defendant creates a false designation of origin and a misleading representation of fact as to the origin and sponsorship of Defendant's goods and services.

78.     OpenText, most particularly OTI, has been damaged as a direct and proximate result of Defendant's false designation of origin and misleading representation of facts as to the origin and sponsorship of Defendant's goods and services.

79.     Defendant's conduct has caused, and continued infringing actions and conduct will continue to cause, irreparable injury to OpenText unless enjoined by the Court.  In particular,

OpenText will continue to suffer irreparable harm to its reputation and the goodwill associated with its Catalyst name and mark.

80.     OpenText has no adequate remedy at law.

81.     Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of Defendant's goods and services to the public is a willful violation of 15 U.S.C.§ 1125(a).

**COUNT III**
**False Advertising**
**(15 U.S.C. § 1125(a))**

82.     OpenText re-alleges and incorporates by reference each and every allegation set forth above.

83.     Defendant has made numerous and repeated false and/or misleading statements of fact concerning (1) the level of innovation of its products and services and (2) the number of years Defendant has operated as a business in association with its commercial advertising and promotion of its products and services.  These statements are likely to cause confusion or mistake as to the characteristics of Defendant's goods and services.

84.     These materially false and/or misleading statements were produced and used at least in advertising and marketing appearing on Defendant's publicly-accessible Merlin Website, and thus such materially false and/or misleading statements were distributed in interstate commerce.

85.     Each of Defendant's false and misleading statements actually deceived or are likely to deceive a substantial portion of the intended audience of actual and potential purchasers of

eDiscovery software and/or services.  These statements have influenced or are likely to influence the deceived consumers' purchasing decisions.

86.     These materially false and/or misleading statements constitute false advertising in violation of 15 U.S.C.§ 1125(a).

87.     OpenText, most particularly OTI, has been and will continue to be damaged as a direct and proximate result of Defendant's material false and misleading statements.

88.     Defendant's conduct has caused, and continued false and misleading statements will continue to cause, irreparable injury to OpenText unless enjoined by the Court.

89.     OpenText has no adequate remedy at law.

90.     Defendant's conduct is likely to cause, has caused, and continued infringing actions and conduct will continue to cause irreparable injury to OpenText unless enjoined by the Court.

91.     Defendants have made these false and misleading statements knowing them to be untrue or with reckless disregard for their truth, making Defendant's action willful.

**COUNT IV**
**Unfair Competition**
**(15 U.S.C. § 1125(a))**

92.     OpenText re-alleges and incorporates by reference each and every allegation set forth above.

93.     OpenText owns all common law trademark rights to the name Catalyst and to the Catalyst sunburst logo, as well as all goodwill associated with or symbolized by the Catalyst name and Catalyst sunburst logo.

94.     Defendant's unauthorized use in commerce of the Catalyst trademarks is likely deceive consumers as to the origin, source, sponsorship, and/or affiliation of Defendant's goods

and services, and is likely to cause consumers to believe that Defendant's goods and services are sold, authorized, endorsed, and/or sponsored by OpenText, or that Defendant is in some way affiliated with or sponsored by OpenText.

95.     Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with OpenText.

96.     Defendant's misappropriation and unauthorized use of the Catalyst trademarks as described above constitutes unfair competition in violation of 15 U.S.C.§ 1125(a).

97.     OpenText, most particularly OTI, has been damaged as a direct and proximate result of Defendant's unfair competition.

98.     Defendant's conduct has caused, and continued unfair competition will continue to cause, irreparable injury to OpenText unless enjoined by the Court.

99.      OpenText has no adequate remedy at law.

### COUNT V
### Colorado Consumer Protection Act
### Colo. Rev. Stat. § 6-1-101, et seq.

100.  OpenText re-alleges and incorporates by reference each and every allegation set forth above.

101.     By virtue of the acts set forth above, Defendant engaged in deceptive trade practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.*

102.     Defendant's deceptive trade practices include: (i) using OpenText's Catalyst and Catalyst sunburst logo marks in association with the marketing, sale, or provision of goods and services to Defendant's actual and potential clients; (ii) using OpenText's proprietary content in

association with the marketing, sale, or provision of goods and services to Defendant's actual and potential clients; and (iii) misrepresenting the nature or quality of its goods and services to actual and potential consumers.

103.    Defendant's deceptive trade practices occurred in the course of Defendant's business, vocation and/or occupation.

104.    Defendant's actions significantly impacted the public as actual or potential consumers of OpenText's goods and services are likely to be deceived as to the source, nature and/or quality of Defendant's goods or services or may be unfairly diverted from using OpenText's goods and services.

105.    As a direct and proximate result of Defendant's deceptive trade practices, OpenText, most particularly OTI, has suffered injury in the form of lost customers, lost profits, and lost goodwill, and are entitled to actual damages and/or Defendant's profits generated as a result of its unfair competitive acts.

106.    Under the Colorado Consumer Protection Act, Plaintiffs are entitled to injunctive relief.

## **PRAYER FOR RELIEF**

OpenText respectfully requests that this Court enter judgment in its favor for each and every claim for relief as set forth above, and award it relief including, but not limited to, the following:

A.    Declaring that Defendant has infringed OpenText's copyright rights by reproducing, distributing, and/or publicly displaying each of the Catalyst Works in violation of 17 U.S.C. §§ 106 and 501;

B.     Declaring that Defendant's use of the Catalyst name and Catalyst sunburst logo in interstate commerce has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association of Defendant with OpenText or as to the origin, sponsorship, or approval of Defendant's goods and services by OpenText in violation of 15 U.S.C. § 1125(a);

C.     Declaring that Defendant has made material false and misleading statements of fact in interstate commerce concerning the level of innovation of its products and the number of years Defendant has operated as a business in violation of 15 U.S.C.§ 1125(a);

D.     Declaring that Defendant's misappropriation and unauthorized use of the Catalyst trademarks constitutes unfair competition in violation of 15 U.S.C.§ 1125(a);

E.     Declaring that Defendant's actions violate the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, et seq.;

F.     Issuing an order permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise, from:

     1.     reproducing, distributing and/or publicly displaying the Asserted Catalyst Works and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Asserted Catalyst Works;

2.      using the Catalyst name and Catalyst sunburst logo in interstate commerce in a manner that causes any likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association of Defendant with OpenText or the origin, sponsorship, or approval of Defendant's goods and services by OpenText; and

3.      making any material false and misleading statements of fact in interstate commerce concerning the level of innovation of its products and the number of years Defendant has operated as a business.

G.      Ordering Defendant to provide an accounting of its profits attributable to its exploitation of the Asserted Catalyst Works, and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Asserted Catalyst Works;

H.      Ordering that Defendant destroy or deliver up for destruction all materials in Defendant's possession, custody, or control used by Defendant in connection with Defendant's infringement of the copyrighted Catalyst Works and any products and works that embody any reproduction or other copy or colorable imitation of the Work, as well as all means for manufacturing them;

I.      Determining that Defendant's actions were willful;

J.      Finding that Defendant's violations of the Federal Lanham Act make this an exceptional case;

K.      Award to OpenText:

1.      Defendant's profits obtained as a result of Defendant's infringing conduct, including but not limited to all profits from sales and other exploitation of the Asserted Catalyst Works and any products, works, or other materials that include, copy, are derived from, or otherwise embody the Asserted Catalyst Work, or in the Court's discretion, such amount as the Court finds to be just and proper;

2.      actual damages sustained by OpenText as a result of Defendant's infringing conduct, in an amount to be proven at trial;

3.      OpenText's reasonable attorneys' fees associated with the Lanham Act claims.

4.      OpenText's reasonable attorneys' fees and costs pursuant to Colo. Rev. Stat. § 6-1-113.

L.      For other and further relief, in law or in equity, to which OpenText may be entitled or which the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 8th day of July, 2022

*/s/ Jared B. Briant*
Jared B. Briant
Faegre Drinker Biddle & Reath LLP
1144 15th Street, Suite 3400
Denver, CO 80202
Phone: (303) 607-3500
Fax: (303) 607-3600
Email: jared.briant@faegredrinker.com

*Attorneys for Plaintiffs Open Text Holdings, Inc. and Open Text Inc.*

*Of Counsel:*

Jordan A. Sigale, (Ill. ARDC #6210047)
jsigale@vedderprice.com
John K. Burke (Ill. ARDC #6312447)
jburke@vedderprice.com
Theodore Gelderman (Ill. ARDC # 6339011)
tgelderman@vedderprice.com
VEDDER PRICE P.C.
222 N. LaSalle St.
Chicago, IL 60601
Tel: 312.609.7500